LEWIS, BRADLEY and WARD, JJ., concurred.

Judgment affirmed, with costs.

---

THOMAS A. H. HAY and WILLIAM O. HAY, as Survivors of Themselves and JACOB HAY, Deceased, Respondents, *v.* JACOB JAECKLE, Appellant, Impleaded with Others.

*Promissory note — who is a bona fide holder thereof as a matter of law — what is not a diversion from its intended use.*

Where, upon the trial of an action brought to recover upon a promissory note, it appears from the undisputed evidence that the plaintiff took the note in suit before maturity and paid full value therefor, and there is no evidence that would raise even a suspicion that the note was purchased in bad faith, the plaintiff is, as a matter of law, a *bona fide* holder of such note.

Where commercial paper is given to enable a payee to raise money at a particular bank, and the payee procures such note to be discounted at another bank, it does not constitute a diversion of the paper from the purpose for which it was given.

APPEAL by the defendant, Jacob Jaeckle, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Erie on the 3d day of May, 1895, upon the verdict of a jury rendered after a trial at the Erie Circuit.

*Myron H. Clark*, for the appellant.

*Henry B. Loveland*, for the respondents.

DAVY, J.:

This action was brought upon a promissory note dated June 5, 1891, made by the defendant Jaeckle to the order of A. C. Briggs

for $550, payable two months after date at the American Exchange Bank, Buffalo, N. Y. The note was indorsed by the defendants A. C. Briggs and J. H. Buck and delivered to the plaintiffs before maturity. It was given at the request of G. D. Briggs, who was the agent of his wife, A. C. Briggs, and was solely for her accommodation.

The defendant Jaeckle contends that at the time the note was given G. D. Briggs agreed to have it discounted at the Farmers and Mechanics' Bank, in Buffalo, where he had, or claimed to have, securities, and that he also agreed to take care of it when it became due. It appears that the note was not discounted at the bank, but was sent to the defendant Buck, who sent it to the plaintiffs with a request that they discount it and send him $400 in money and apply the balance on his account. The plaintiffs discounted the note as requested and sent over $300 to Buck in cash and credited him with the balance. The note was not paid at maturity, but was duly protested for non-payment.

On the 8th day of December, 1891, a new note was given by the defendant A. C. Briggs, payable to the order of J. H. Buck, for $550, which was delivered to the plaintiffs.

The defendant Jaeckle claimed upon the trial that the new note of December eighth was given in payment of the first note. This was denied by the plaintiffs, who contend that it was taken as additional security for the unsecured accounts.

The learned judge at the trial held, as matter of law, that the plaintiffs were *bona fide* holders of the first note, and were entitled to recover thereon unless the second note was given in payment, and not as collateral security, for the first note.

It is now urged by the appellant that the court erred in holding, as a matter of law, that the plaintiffs were *bona fide* holders of the first note. It appears from the evidence that the plaintiffs took the note before maturity and paid full value therefor. These facts are not disputed, and there is no evidence in the case that would raise even a suspicion that they purchased the note in bad faith.

The defendant Buck, about the fourteenth of June, mailed a letter, with the note inclosed, to the plaintiffs, requesting them to discount it and send him their check for $400, and to apply the

balance, $150, on his account. Buck was owing the plaintiffs at that time $2,250. He wanted more goods, and the understanding and agreement between them was that if he would furnish the plaintiffs with good securities or notes they would continue their line of credit. This arrangement was made in May before plaintiffs received the note in question, and in pursuance of that agreement they continued to send him goods. No suspicious circumstances were connected with this transaction that can be discovered from the evidence. The business was done in the ordinary and usual way of transacting business among merchants.

In the case of *Canajoharie Nat. Bank* v. *Diefendorf* (123 N. Y. 201) the court held that "The payment of value for negotiable paper is a circumstance to be taken into account with other facts in determining the question of the *bona fides* of the transaction, and when full value is paid is entitled to great weight. But that fact is never conclusive, except in the absence of evidence tending to show notice or bad faith."

The defendant Jaeckle offered no evidence showing actual notice or bad faith on the part of the plaintiffs, and there were no suspicious circumstances as to the *bona fides* of the plaintiffs in purchasing the note; therefore, the learned judge committed no error in not submitting that question to the jury.

The learned counsel for the appellant also contends that while the defendant Jaeckle gave the note and intended that it should be a negotiable promissory note, yet, on account of the agreement with Briggs that it was to be discounted at the Farmers and Mechanics' Bank in Buffalo, it lost its negotiability, and the failure to get it discounted at that bank was a fraudulent diversion of the note, and, therefore, the plaintiffs cannot recover.

I think it is very doubtful whether the defendant Jaeckle ever gave his note relying upon Briggs' representations. The note was made payable at the American Exchange Bank, and not at the Farmers and Mechanics' Bank. There can be no question but what the defendant Jaeckle gave his note to Mrs. Briggs to enable her to raise money on it, and to use it as she saw fit. What difference, then, did it make to him who discounted the note? How was he injured in any respect because the note was not discounted at the Farmers and Mechanics' Bank? His injury arose from the fact that

the note was not paid, and that fact is no evidence that Briggs did not have securities in the bank at the time that he made the representations, or that he did not intend to pay the note at maturity.

The elementary writers, in discussing the subject in reference to the diversion of commercial paper, all agree that where such paper is given to enable a payee to get the money at a particular bank, and he procures it to be discounted at another bank, it does not constitute a diversion of the paper, from the purpose for which it was given.

Daniel, in his work on Negotiable Instruments (§ 792), lays down the rule in reference to what amounts to a diversion of accommodation paper. He says: "In order to constitute a misappropriation there must be a fraudulent diversion from the original object and design; and it is now well settled that where a note is indorsed for the accommodation of the maker, to be discounted at a particular bank, it is no fraudulent misappropriation of the note, if it is discounted at another bank or used in the payment of a debt or otherwise for the credit of the maker. If the note has effected the substantial purpose for which it was designed by the parties, an accommodation maker or indorser cannot object that the accommodation was not effected in the precise manner contemplated." (*Schepp* v. *Carpenter*, 51 N. Y. 602; Bigelow on Bills & Notes, 456.)

It was held in *Brooks* v. *Hey* (23 Hun, 372) that "when a note is made for the general accommodation of the payee and no restrictions are placed upon him as to its use, he may use it in any way which seems beneficial to him, provided it is not negotiated usuriously, and his failure to apply the proceeds according to a prior agreement with the maker constitutes no defense to the latter in an action brought against him thereon." The learned judge says: "The failure on the part of a payee of an accommodation note to appropriate the proceeds according to a prior agreement, is no defense for the accommodation maker, otherwise there could be no recovery on an accommodation note." (*Merchants' Nat. Bank* v. *Comstock*, 55 N. Y. 24.)

We must, therefore, hold that the note in question was not diverted from the purpose for which it was given. The plaintiffs having taken it in good faith before maturity in the usual course of

business and having paid full value for it must be regarded as *bona fide* holders thereof.

It follows, therefore, that the judgment appealed from should be affirmed, with costs against the defendant Jaeckle.

LEWIS, BRADLEY and WARD, JJ., concurred.

Judgment affirmed.